UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Estate of ADAM COLLIERS, by TRACY BUTTERFIELD as the Personal Representative of the Estate of Adam Colliers; and TRACY BUTTERFIELD, individually, as the mother of Adam Colliers;<br><br>Plaintiffs,<br><br>vs.<br><br>SNOHOMISH COUNTY, and BRYSON McGEE,<br><br>Defendants. | NO.<br><br>COMPLAINT |

COMES NOW the plaintiffs and allege as follows:

## I. PARTIES

1. Tracy Butterfield is the mother of the decedent Adam Colliers. She resides in Snohomish County. She is the appointed personal representative of the Estate of Adam Colliers, having been appointed by the King County Superior Court on December 22, 2010.

COMPLAINT – 1

CARNEY
BADLEY
SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

2. Bryson McGee is a deputy sheriff employed by the Snohomish County Sheriff's Office, and he is believed to be a resident of the Western District of Washington.

3. Snohomish County is a county within Washington State and that County is located within the Western District of Washington.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983.

5. All claims arose in the Western District of Washington. On information and belief, all parties reside in the Western District of Washington. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## III. OPERATIVE FACTS

6. In the early morning of September 4, 2010, the Snohomish County Sheriff's Office received two different 911 calls from citizens. One citizen residing on 1st Avenue West in Gold Bar, Washington telephoned and reported that she could hear a male and a female being verbal and the disturbance was coming from across the street from his home.

7. Snohomish County Sheriff's Office dispatch contacted Deputy Sheriff Bryson McGee, who was at that time at the Gold Bar sub-station of the Sheriff's Office. At approximately 1:32 a.m., McGee was dispatched to the area of 500 1st Avenue West, Gold Bar, Washington, to investigate the loud voices complaint.

8. Dispatch informed McGee that a 911 caller reported hearing a man and a female being verbal, but that the caller could not see whoever was causing the disturbance.

9. Deputy Sheriff Ed Whipple was also on duty that evening, and he was also at the Gold Bar sub-station when McGee was dispatched to investigate the loud voices report.

COMPLAINT – 2

CARNEY
BADLEY
SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

Whipple told McGee that he would also respond to the area of the loud voices complaint and act as McGee's cover unit.

10. Whipple and McGee left the sub-station, each in their own separate patrol vehicle.

11. As McGee left the substation he received an update from the sheriff's department dispatcher, advising him that a 911 caller could now see a male running up and down the street and could hear him screaming loudly. Dispatch advised McGee that this caller described the man as wearing a black tank top and shorts.

12. On the way to 1st Avenue West, McGee drove past two people walking eastbound on Orchard Street. Dispatch then advised McGee that a 911 caller had reported hearing a male and a female who were being verbal, and who from the sound of their voices were "possibly" being physical.

13. Upon hearing this, McGee turned around and went back in the direction he had come in an effort to locate the two people he had passed in his car. Deputy Whipple continued on to the 1st Avenue West address of the first 911 caller.

14. McGee was unable to find the two pedestrians he had seen earlier, so he turned around and again headed for 500 1st Avenue West.

15. Whipple arrived at the 911 caller's address first.

16. Upon arrival he saw a man, Adam Colliers, standing in the doorway of the house at 507 1st Avenue West. The man was wearing a black tank top and black shorts.

17. As Whipple was getting out of his patrol car, Colliers ran towards him and yelled something, but Whipple could not understand him.

COMPLAINT - 3

CARNEY BADLEY SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

18. Whipple told Colliers to stop. Colliers did not stop and kept approaching Whipple's car.

19. When Colliers got to the front of Whipple's car he stopped and started talking very fast. Whipple could not understand what Colliers was saying.

20. Colliers was flailing his arms and kept moving around. Whipple asked Colliers what was wrong and Colliers then made some statement about the devil.

21. At this point Whipple believed that Colliers was behaving irrationally.

22. At this point Whipple began to become concerned for his safety.

23. Whipple ordered Colliers to sit down on the ground. Initially Colliers did not follow this order.

24. Whipple again ordered Colliers to sit down and this time Colliers did sit down in the middle of the street.

25. While sitting down Colliers kept speaking incoherently and he kept moving from side to side.

26. Whipple then radioed to McGee and told McGee to come to his location because Colliers was acting irrationally.

27. By this time Whipple had formed the belief that Colliers was having some kind of an adverse drug reaction.

28. Whipple ordered Colliers to sit still but he did not comply with that order.

29. Whipple ordered Colliers to lie down on his stomach. Colliers then rolled over onto his hands and knees.

30. Whipple then ordered Colliers to lie down on his stomach and to put his hands out to his sides.

COMPLAINT – 4

CARNEY BADLEY SPELLMAN
701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

31. Colliers went onto his stomach but he did not put his hands out to his sides.

32. Deputy McGee then arrived on the scene in his patrol car.

33. McGee got out of his patrol car and approached to where Whipple was standing next to Colliers, who was lying on the ground.

34. McGee observed that Colliers' eyes were glazed over.

35. McGee observed foaming at the edges of Colliers' mouth.

36. McGee could not understand anything that Colliers was saying.

37. McGee believed that Colliers was under the influence of some kind of drug.

38. McGee instructed Colliers to stay down on the ground.

39. Whipple and McGee grabbed Colliers' arms and attempted to handcuff him with his arms behind his back.

40. Colliers resisted and pulled his arms away.

41. McGee decided that he would use his taser and he told Whipple to watch out because he was going to fire his taser at Colliers.

42. Whipple let go of Colliers' arm and stepped back so that he was no longer in contact with Colliers.

43. McGee fired his taser at Colliers.

44. The two taser darts hit Colliers in the chest area.

45. There was a five second discharge of electricity into Colliers body.

46. Colliers screamed.

47. Whipple and McGee again tried to handcuff Colliers but he continued to refuse to put his hands behind his back and he continued to resist their efforts to handcuff him.

COMPLAINT – 5

CARNEY
BADLEY
SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

48. McGee believed that the taser discharge did not have the desired effect because Colliers was "fighting through" the taser discharge.

49. Colliers was on the ground on his stomach but he had his hands in the area of his waist band.

50. McGee instructed Colliers to remove his hands from his waist band and to place them out to his sides.

51. Colliers removed one hand but not the other and continued to resist being handcuffed.

52. McGee decided to deploy the taser against Colliers again.

53. McGee pulled the taser trigger and activated the taser a second time for another five seconds.

54. Colliers still continued to resist being handcuffed after the second firing of the taser.

55. At this point McGee believed that the taser darts had not pierced Colliers' clothing or his skin.

56. McGee advised Whipple he was going to use the taser a third time.

57. McGee told Colliers if he didn't remove his hands from underneath his body and place them behind his back he'd be tased again.

58. Colliers did not comply with this instruction.

59. In McGee's opinion, Colliers acted like McGee and Whipple were not even there.

60. Colliers continued to scream in an unintelligible fashion.

61. McGee perceived that Colliers was trying to stand up.

COMPLAINT – 6

CARNEY
BADLEY
SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

62. McGee put his knee in the middle of Colliers' back to hold him down on the ground.

63. McGee then applied the taser directly to Colliers' body in drive-stun mode.

64. McGee perceived that the third taser application seemed to have the desired effect on Colliers.

65. After the third application of the taser, Whipple was able to grab the one arm that Colliers had underneath him.

66. McGee then holstered his taser.

67. McGee then punched Colliers in his rib cage three times with a closed fist.

68. McGee and Whipple were then able to handcuff Colliers with his arms behind his back.

69. After Colliers was handcuffed, McGee and Whipple stood up. They used police radio to advise dispatch that they had deployed a taser.

70. McGee then noticed that Colliers was not breathing any more.

71. McGee and Whipple then rolled Colliers over so that he was now lying on his back and saw that Colliers was motionless.

72. Whipple then went to his patrol car and retrieved his CPR mask.

73. One of the deputies then removed the handcuffs from Colliers.

74. Whipple put on the mask and performed mouth to mouth resuscitation and attempted to get Colliers breathing on his own again.

75. McGee performed chest compressions on Colliers.

76. Colliers never recovered consciousness.

77. An aid car was summoned and arrived at the scene.

COMPLAINT – 7

CARNEY BADLEY SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

78. Colliers was transported by the aid car to Valley General Hospital.

79. Colliers was pronounced dead at the hospital on the morning of September 4, 2010.

80. An autopsy was performed.

81. In the course of the autopsy two taser marks were found on the left chest wall.

82. During the autopsy two corresponding holes in Colliers' t-shirt were found. These holes match up with the taser marks found on Colliers' chest.

83. The coroner concluded that Colliers died of cardiopulmonary arrest.

84. The administration of electrical pulses from weapons such as a taser increases the risk of cardiopulmonary arrest.

85. Deputy McGee's repeated use of the taser caused Colliers' cardiac arrest and killed Adam Colliers.

86. Prior to the time of this incident, the Snohomish County Sheriff's Office was warned that persons subjected to electrical shocks from a taser have a greater risk of death or serious bodily injury if they are exhibiting signs of excited delirium at the time the taser is used.

87. Prior to the time of this incident, the Snohomish County Sheriff's Office was warned that persons subjected to electrical shocks from a taser have a greater risk of death or serious bodily injury if they have over-exerted themselves in a physical struggle shortly before the time the taser is used.

88. Prior to the time of this incident, the Snohomish County Sheriff's Office was warned that persons subjected to electrical shocks from a taser have a greater risk of death or serious bodily injury if they under the influence of drugs when the taser is used.

COMPLAINT – 8

CARNEY BADLEY SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

89. Prior to the time of this incident, the Snohomish County Sheriff's Office was warned that there was evidence indicating that it was dangerous to administer taser electrical shock to the chest area, and that use of the taser in the chest area should be avoided.

90. Prior to the time of this incident, the Snohomish County Sheriff's Office was warned that officers should avoid making repeated taser discharges on a subject.

91. Prior to this incident, the Snohomish County Sheriff's Office was warned that that it should develop its own policy regarding the use of tasers against people displaying signs of agitated delirium or excited delirium because these individuals are at significant risk of arrest related death.

92. Prior to the time of this incident involving Adam Colliers, the Snohomish County Sheriff's Office did not have any written policy or guidelines that specifically addressed the use of tasers against persons exhibiting signs of agitated delirium or excited delirium.

93. Prior to the time of this incident involving Adam Colliers, the Snohomish County Sheriff's Office did not have any written policy or guidelines that specifically addressed the use of tasers against persons exhibiting signs of drug intoxication.

94. Prior to the time of this incident involving Adam Colliers, the Snohomish County Sheriff's Office did not have any written policy or guidelines that specifically addressed the use of tasers against persons exhibiting signs of chronic drug use.

95. Prior to the time of this incident involving Adam Colliers, the Snohomish County Sheriff's Office did not have any written policy or guidelines that specifically addressed the use of tasers against persons exhibiting signs of severe exhaustion or over exertion.

COMPLAINT – 9

CARNEY
BADLEY
SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

96. Prior to the time of this incident involving Adam Colliers, the Snohomish County Sheriff's Office did not have any written policy or guidelines that specifically addressed the use of tasers against persons exhibiting signs of mental illness.

97. Prior to the time of this incident involving Adam Colliers, the Snohomish County Sheriff's Office did not have any written policy or guidelines that specifically addressed the use of tasers against persons exhibiting signs that they were experiencing hallucinations.

98. Prior to the time of this incident involving Adam Colliers, the Snohomish County Sheriff's Office did not have any written policy or guidelines that specifically addressed the use of force against people exhibiting signs of agitated delirium or excited delirium.

99. Prior to the time of this incident involving Adam Colliers, the Snohomish County Sheriff's Office did not have any written policy or guidelines that specifically addressed the use of force against people exhibiting signs that they were exhibiting signs of drug intoxication.

100. Prior to the time of this incident involving Adam Colliers, the Snohomish County Sheriff's Office did not have any written policy or guidelines that specifically addressed the use of force against people exhibiting signs that they were exhibiting signs of chronic drug use.

101. Prior to the time of this incident involving Adam Colliers, the Snohomish County Sheriff's Office did not have any written policy or guidelines that specifically addressed the use of force against people exhibiting signs that they were exhibiting signs of severe exhaustion or over exertion.

102. Prior to the time of this incident involving Adam Colliers, the Snohomish County Sheriff's Office did not have any written policy or guidelines that specifically addressed the use of force against people exhibiting signs that they were mentally ill.

COMPLAINT – 10

CARNEY BADLEY SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

103. Prior to the time of this incident involving Adam Colliers, the Snohomish County Sheriff's Office did not have any written policy or guidelines that specifically addressed the use of force against people exhibiting signs that they were experiencing hallucinations.

104. Prior to the time of this incident, the Snohomish County Sheriff's Office did not train its officers about the dangers of using tasers against subjects who were particularly vulnerable to death or serious bodily injury if tasers were used against them.

105. Prior to the time of this incident, the Snohomish County Sheriff's Office did not train its officers how to minimize the risks of deaths that are associated with the use of tasers.

106. Prior to the time of this incident, the Snohomish County Sheriff's Office did not train its officers about the use of force against subjects exhibiting signs of agitated delirium or excited delirium.

107. Prior to the time of this incident, the Snohomish County Sheriff's Office did not train its officers about the use of force against subjects who were exhibiting signs that they were under the influence of drugs.

108. Prior to the time of this incident, the Snohomish County Sheriff's Office did not train its officers about the use of force against subjects who were exhibiting signs that they were chronic drug users.

109. Prior to the time of this incident, the Snohomish County Sheriff's Office did not train its officers about the use of force against subjects who were exhibiting signs of severe exhaustion or over exertion.

110. Prior to the time of this incident, the Snohomish County Sheriff's Office did not train its officers about the use of force against subjects exhibiting signs of mental illness.

COMPLAINT – 11

CARNEY BADLEY SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

111. Prior to the time of this incident, the Snohomish County Sheriff's Office did not train its officers about the use of force against subjects exhibiting signs that they were experiencing hallucinations.

112. Prior to the time of this incident, the Snohomish County Sheriff's Office did not train its officers about the use of force against subjects who did not appear to be able to understand what was being said to them.

113. Prior to the time of this incident, the Snohomish County Sheriff's Office recklessly disregarded the need for training on the use of tasers which would avoid known risks of death and serious bodily injury.

114. Prior to the time of this incident, the Snohomish County Sheriff's Office recklessly disregarded the need for training officers about the use of force against subjects who appeared to be either mentally ill, under the influence of drugs, hallucinating, or incapable of understanding what an officer was saying.

115. Prior to the time of this incident, the Snohomish County Sheriff's Office recklessly disregarded the need for training officers about the use of force against subjects who appeared to be exhibiting signs of agitated delirium or excited delirium.

116. Prior to the time of this incident, the Snohomish County Sheriff's Office recklessly disregarded the need for training officers about the use of force against subjects who appeared to be severely exhausted or suffering from over exertion.

117. The failure of the Snohomish County Sheriff's Office to provide adequate training to its officers regarding the use of tasers caused Adam Colliers' death.

118. The failure of the Snohomish County Sheriff's Office to provide adequate training to its officers regarding the use of force against subjects who appeared to be either

COMPLAINT – 12

CARNEY
BADLEY
SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

mentally ill, under the influence of drugs, hallucinating, or incapable of understanding what an officer was saying, caused the death of Adam Colliers.

119. The failure of the Snohomish County Sheriff's Office to provide adequate training to its officers regarding the use of force against subjects who appeared to be suffering from agitated delirium or excited delirium caused the death of Adam Colliers.

### IV. FIRST CAUSE OF ACTION

120. Plaintiffs reallege and incorporate by reference all previous allegations.

121. Defendant Bryson McGee, acting under color of state law, used excessive force against Adam Colliers, killing him, and thereby depriving him of his Fourth Amendment rights, contrary to 42 U.S.C. § 1983.

### IV. SECOND CAUSE OF ACTION

122. Plaintiffs reallege and incorporate by reference all previous allegations.

123. Defendant Snohomish County Sheriff's Department, by failing to train its officers, failed to prevent deputy Bryson McGee from killing Adam Colliers, and thereby deprived Adam Colliers of his Fourth Amendment rights under color of state law.

### IV. THIRD CAUSE OF ACTION

124. Plaintiffs reallege and incorporate by reference all previous allegations.

125. Defendant Bryson McGee, acting under color of state law, used excessive force against Adam Colliers, killing him, and thereby deprived Tracy Butterfield of her Fourteenth Amendment substantive due process right to the companionship and society of her son, Adam Colliers.

### IV. FOURTH CAUSE OF ACTION

126. Plaintiffs reallege and incorporate by reference all previous allegations.

COMPLAINT – 13



701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

127.     Defendant Snohomish County Sheriff's Office, by failing to train its officers, failed to prevent deputy Bryson McGee from killing Adam Colliers, and thereby deprived Tracy Butterfield of her Fourteenth Amendment substantive due process right to the companionship and society of her son, Adam Colliers.

## V.   JURY DEMAND

Plaintiff demands a jury of twelve.

## VI.   PRAYER FOR RELIEF

Wherefore, having stated her complaint against the defendants, plaintiffs pray for the following relief:

1.     Judgment against defendants for compensatory damages in an amount to be proved at trial;

2.     Judgment against defendant McGee for punitive damages pursuant to 42 U.S.C. § 1988;

3.     An award of costs and attorney's fees, as provided in 42 U.S.C. § 1988, and other provisions of statutory and common law;

4.     Entry of a declaratory judgment stating that defendants deprived Adam Colliers of his federal constitutional rights; and

5.     For such other relief as the Court may deem just and equitable.

COMPLAINT – 14

CARNEY BADLEY SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

DATED this 25th day of June, 2013.

CARNEY BADLEY SPELLMAN, P.S.

/s/ James E. Lobsenz
/s/ Cindy Flynn
James E. Lobsenz, WSBA No. 8787
Cindy Flynn, WSBA No. 25713
Attorneys for Plaintiffs
CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
Phone: (206) 622-8020
Facsimile: (206) 467-8215
lobsenz@carneylaw.com
Flynn@carneylaw.com

COMPLAINT – 15

CARNEY BADLEY SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215

BUT014 of19cq2044

## VERIFICATION

I, TRACY BUTTERFIELD, HAVE READ THIS COMPLAINT AND BELIEVE THE DOCUMENT TO BE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

DATED June 25, 2013, at Lake Stevens, Washington.

*[signature]*
Tracy Butterfield

COMPLAINT – 16

CARNEY
BADLEY
SPELLMAN

701 Fifth Avenue, Suite 3600
Seattle, Washington
98104-7010
T (206) 622-8020
F (206) 467-8215